Hitchcock, C. J.
Several bills of exceptions were tendered and allowed in this case, and various error's assigned; but it is believed that the whole case depends upon one or two points presented by the record. On the trial of the case, the ^plaintiffs below offered in evidence the will of Nathaniel Lyons, executed on July 7, 1833, and admitted to record in the month of September of the same year. They also exhibited in evidence the account of Negley, one of the executors, admitting a large balance to be in his hands, after the payment of debts and specific legacies, and also showing that at subsequent terms of the court, this surplus had been paid over to a part of the legatees other than the then plaintiffs, the vouchers for which latter payments had been examined and approved by the court of common pleas, and ordered to be filed. They also proved that the then plaintiff, Mary Ann *266 G-árd, was one of the children of Joanna Bobinson. Having introduced this evidence, the then plaintiffs rested.
Whereupon the defendant, now plaintiff in error, moved for judgment of nonsuit, which was overruled by the court. This ^decision of the court was excepted to, and is now assigned for error.
Whether the court of common pleas erred in this particular, depends, principally, upon the construction of the will of Nathaniel Lyons.
The testator, after directing his debts to be paid, directs his executors to sell all his real and personal estate, and to make provision for tho support of his wife as long as she shall live; and in the further disposal of his estate he proceeds as follows: “ I will and devise to my son Jotham, two hundred dollars for his legal share, and should my estate reach, as 1 have directed it to be divided, my said executors shall allow him to the amount of $400 for his service, or work which he done for me after becoming of age.
“2. I will and direct, that should Ileave this world before delivery of a deed of conveyance, and which is executed and made to my daughter, Mary Winkloy, for a tract of land whereon she lives, and occupies, lying in Indiana, that my said executors shall make delivery according to law, to her, said deed for her full share and portion, which I grant to her, besides $100 to her son John Winkly, when he arrives to his age, etc.
“3. I will and direct that my daughter Sarah shall have $100 ; to my grandsons, Bichard and William Taylor, each of them $150, and my said daughters, my grand-daughters, Jean and Hannah Shearer, each $100 when they arrive at their lawful age or marriage.
“ 4. I will and direct that my daughter Phebe shall have $100, and to each of her daughters, namely, to Eliza Ann, Marcy, Charlotte, and Lucretia, $100, each of them when they arrive at their lawful age or marriage.
“5. I will and direct that Elizabeth, my daughter, shall have $100, and to her sons and daughters, my grandchildren, namely, to John, Nathaniel, and Marcy Holmes, each of them $100. And further, I will and and devise *to my grandson, John Holmes, when he arrives at his lawful age, a tract of land containing forty acres, ” etc.
Next, after again directing his executors to sell his real and per *267 sonal estate, and make provision for his widow, he proceeds as follows: “ As soon as the assets come to hand, pay each in proportion to their share, and further, should my estate not reach, to pay each the amount expressed herein, to be proportioned to each, and should an overplus be left, after exposing and settling up all the within-mentioned moieties or portions, then and in that case, to be further distributed to each of the within mentioned legatees, or to their heirs within mentioned, paying all reasonable expenses,” etc.
By the last clause of the will, John C. Negley and John McClure, are appointed executors, and the will is duly signed and attested. Next follows upon the same paper, the following, which is stated to have been signed by the testator, and attested by the same witnesses, at the same time with the signing and attesting the will:
“ Codicil. Before signing, the testator annexed, or caused this codicil to be annexed, that is to say, that he wills and directs if the estate reaches, each of his daughter Joanna Robinson’s children, fifty dollars, and if not sufficient, to each a less proportion according to the judgment of the said executors.”
It appears from the bill of exceptions that the several specific legacies were paid, and the controversy in this case is as to the surplus, which, by the terms of the will, is to be divided among the respective legatees.' It is insisted on the part of the defendant in ei’ror, that the children of Joanna Robinson are as much legatees as those named in the body of the will, and as well entitled to the surplus. This is controverted by the plaintiff in error, wbo claims that this surplus was rightly distributed to the legatees named in the body of the will.
Had this codicil, as it is termed, been executed on a day subsequent to the execution of the will itself, there might have been more difficulty in arriving at the intention of the testator. *In such case, however, I am not satisfied that there would have been any great difficulty. In construing a will, to which are attached or added codicils, the whole is to be taken together as one instrument. The codicils constitute a part of the will. Westcott w. Cady, 5 Johns. 343.
But this is a case peculiar in its aspect. The will was drawn up and prepared for signature, when it is discovered that no provision is made for the children of one of the testator’s daughters. Whether this happened from forgetfulness in the testator or by mistake of *268 the scrivener, we know not. But when the discovery was made, or at any rate before the will was signed, this addition of what is called a codicil is made, and then the two are signed at one and the same time, and attested by the same witnesses. The attesting ■ clause of the body of the will is, “signed, sealed and published by the testator, as his last will and testament, in our presence.’' The attesting clause in the addition—“ at the same time and place the testator signed and acknowledged this annexed codicil.” The testator and witnesses appear to have been peculiarly anxious to make it known that this was all part of one and the same transaction. Under these circumstances, it is difficult to find any good reason why any difference should be made in the distribution of the surplus, between the legatees named in the different parts of the instrument; and it seems to me that the same construction must be given, that would have been, had there been but one signing, and that at the end of what is termed the codicil.
It is claimed that the children of Joanna Robinson, were to be excluded from any legacy whatever, until the other legatees were .all paid. This is inferred from the mode of expression: “ If the estate reaches.” This is substantially like other parts of the will. The first bequest is to his son Jotham—the sum of “$200 for his legal share.” Then follows “and should my estate reach,” then an additional sum of $400, etc. After directing other legacies to be paid in full, it is added, “and further, should my estate not reach *to pay the amount,” etc. In such case the executors are directed to pay in proportion to the respective legacies. Taking, the will itself and the attending circumstances into consideration, we are of opinion that the children of Joanna Robinson were entitled to their share of the surplus.
Another ground upon which it was insisted that the plaintiffs should be nonsuited, was, that in the account exhibited, it appeared that the plaintiff in error had paid over this surplus to other legatees, and that his vouchers had been examined and approved by ■the court of probate. And it is claimed that this account so settled is conclusive until opened upon motion, or impeached by bill in chancery.
Where an executor or administrator files his account with the court lor final settlement, and the same is approved by the court, this is conclusive, unless impeached in chancery. But if from such account it appears that there is a balance in the hands of the exe *269 cutor or administrator for distribution, that balance must be distributed. The executor may or may not at his election make returns to the court of this distribution. The act in force which governs the settlement of this estate, is the act of March 12, 1831. Section 14 of this act provides, that after an executor or administrator shall have made his settlement with the court, by which the balance in his hands for distribution, shall have been ascertained, and shall have made distribution such executor or administrator may, at Ms option, file in court an abstract of his payments with the receipts, etc. He may do it at his option, but he is not bound to do it. The next section makes it the duty of the clerk to give notice within thirty days after the term, of the filing of such abstract and voucher’s. And in section 16 it is provided, that at the next term of the court after the notice is given, the receipts filed shall be examined by the court, and if no objections are made, the court shall allow the same and direct the same to be recorded; “ and the executors or administrators shall, by such allowance, be discharged from so much of the sum found by the settlement with the court as aforesaid, *to be in the hands of such executor or administrator, as the persons whose receipts are allowed as in. this section provided, are entitled to.” The only effect of this action of the court is to place upon the record the receipts in the hands of the executor or administrator, and make them final as against those who have signed them, as to so much of the distributive share to which they are entitled. But although the receipts-may cover the whole property, those who are entitled to a distributive share, and have not received it, are not precluded from enforcing their claim.
We think the court of common pleas did not err in overruling the motion for a nonsuit.
This in effect disposes of the whole case, with the exception of one point made by the plaintiff in error, which was this: That the suit was commenced against him alone, whereas it should have been commenced against him and his co-executor, McClure. It is sufficient to say that this is an action for money had and received, and the record shows that the money was in the hands of Negley as acting executor.
The judgment of the court of common pleas is affirmed with cost. ,